IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **IVAN TELEGUZ,** | )<br>) |
| Petitioner, | )<br>) |
| | )  Case No. 7:10CV00254 |
| v. | )<br>)  **OPINION AND ORDER** |
| | ) |
| **EDDIE L. PEARSON, WARDEN,** | )  By: James P. Jones |
| **SUSSEX I STATE PRISON,** | )  United States District Judge |
| | ) |
| Respondent. | ) |

*Matthew C. Stiegler, Philadelphia, Pennsylvania, and Elizabeth Peiffer, Virginia Capital Representation Resource Center, Charlottesville, Virginia, for Petitioner; Katherine Baldwin Burnett, Senior Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Respondent.*

This capital habeas corpus case is before me on remand from the court of appeals, which instructed me to conduct a thorough analysis of whether the petitioner has made a gateway showing of actual innocence sufficient to excuse the procedural default of certain constitutional claims. I have concluded that an evidentiary hearing is required so that I can properly determine the reliability of the new evidence presented by the petitioner.

I

The court of appeals summarized the facts of the case as follows:

> On February 9, 2006, a jury convicted [Ivan] Teleguz of capital murder for hire after his former girlfriend, Stephanie Sipe, was found dead in the apartment she shared with Teleguz's infant son. Although DNA evidence linked Michael Hetrick to the murder, Hetrick testified at Teleguz's trial that Teleguz had hired him to commit the crime. Hetrick's allegations were corroborated by two additional witnesses: Edwin Gilkes and Aleksey Safanov. Gilkes testified that he had been present at a birthday party where Teleguz hired Hetrick to commit the murder. Gilkes also testified that he accompanied Hetrick to Sipe's apartment and waited outside for Hetrick during the murder. Gilkes further claimed that he was afraid of Teleguz because he had heard rumors that Teleguz was a member of the Russian mafia, as well as a specific account of a murder committed by Teleguz in Ephrata, Pennsylvania. According to Gilkes, Teleguz had shot a Russian criminal in the street outside the Ephrata Recreation Center.
>
> Safanov testified that Teleguz attempted to hire him to murder Sipe so that Teleguz would no longer be required to pay child support. Safanov also testified that Teleguz had spoken to him after the murder, complaining that "the black man" he had hired to kill Sipe had left blood at the scene, and offering Safanov money if he would "eliminate [the] killer." J.A. 325. Although other evidence was presented at trial, the Supreme Court of Virginia explained that, "in order to return a guilty verdict, the jury had to believe the testimony of Safanov, Gilkes, and Hetrick." *Teleguz v. Commonwealth,* 273 Va. 458, 643 S.E.2d 708, 728 (2007) ("*Teleguz I*").
>
> On February 14, 2006, the jury recommended a death sentence after finding that two statutory aggravating factors were present: vileness and future dangerousness. Following Teleguz's appeal, the Supreme Court of Virginia affirmed his conviction and sentence. *Teleguz I,* 643 S.E.2d at 732. He then filed a petition for writ of habeas corpus in state court, which the Supreme Court of Virginia dismissed. *Teleguz v. Warden of Sussex I State Prison,* 279 Va. 1, 688 S.E.2d 865, 879 (2010). On November 12, 2010, Teleguz filed a

petition for writ of habeas corpus in the United States District Court for the Western District of Virginia, asserting various grounds for relief. Some of Teleguz's claims had been adjudicated on the merits by the Supreme Court of Virginia, while others had been procedurally defaulted. Teleguz argued that, pursuant to the Supreme Court's decision in *Schlup[v. Delo],* 513 U.S. 298, 115 S.Ct. 851 [(1995)], the district court should consider the merits of his procedurally defaulted claims because new and reliable evidence established that he was actually innocent of Sipe's murder ("*Schlup* gateway innocence claim").

In support of his *Schlup* gateway innocence claim, Teleguz offered several categories of evidence. First, he presented affidavits of third-party witnesses who claimed that Teleguz did not attend the birthday party during which he was alleged to have hired Hetrick to kill Sipe. Second, he offered police reports and affidavits to establish that no murder occurred outside the Ephrata Recreation Center, that no murder that occurred in Ephrata prior to Teleguz's trial remains unsolved, and that the only murder involving a Russian victim occurred at a private residence. Third, Teleguz presented affidavits in which Gilkes and Safanov recanted the testimony they offered at Teleguz's trial. Gilkes now claims that he was coerced into testifying against Teleguz by the prosecutor, who "made clear that if [he] did not, [he] would have been the one on death row today, not Teleguz." J.A. 1281. Gilkes executed affidavits in both 2008 and 2010 denying that Teleguz hired Hetrick to kill Sipe. Safanov currently resides in Kazakhstan, but was contacted by lawyers from Teleguz's defense team. According to their affidavits, Safanov now insists that he never discussed Sipe's murder with Teleguz and agreed to testify during Teleguz's trial only because he believed that if he cooperated with the prosecutor, he would be eligible for a visa allowing him to stay in the United States despite pending federal gun charges.

*Teleguz v. Pearson*, 689 F.3d 322, 325-27 (4th Cir. 2012).

I denied Teleguz's petition for habeas relief on August 1, 2011. The court of appeals granted a certificate of appealability to determine whether I abused my

discretion in denying Teleguz an evidentiary hearing on his *Schlup* gateway innocence claim. The court of appeals has now remanded the case so that I may conduct a rigorous *Schlup* analysis. *See id.* at 330. The court of appeals did not direct me to conduct an evidentiary hearing, but it strongly suggested that a hearing may be necessary to assess the credibility of the recanting witnesses. *See id.* at 330-32.

The parties have fully briefed the *Schlup* issue, both sides arguing that an evidentiary hearing is unnecessary and that I can decide the petitioner's *Schlup* claim on the cold record. I have heard oral argument from the parties. For the reasons stated below, I will order an evidentiary hearing to assist me in evaluating the reliability of the newly presented evidence.

II

Federal habeas review is generally precluded when a claim is procedurally defaulted before the state courts. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default will be excused, however, where the petitioner can show a fundamental miscarriage of justice. *Id.* A petitioner may assert that his case falls into the narrow class of cases implicating a fundamental miscarriage of justice by arguing that he is actually innocent of the crime of which he was convicted. *Schlup*, 513 U.S. 298, 314-15. To show actual innocence that would

excuse procedural default, a petitioner must show that an alleged constitutional error probably resulted in his conviction although he was actually innocent. *Id.* at 327 (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). A *Schlup* actual innocence claim allows a habeas petitioner to overcome procedural defaults by presenting reliable new evidence tending to show that he is innocent of the crime for which he was convicted. To succeed on a *Schlup* claim, the petitioner must show that it is more likely than not that no reasonable juror could have found him guilty beyond a reasonable doubt in light of the new evidence. *Schlup,* 513 U.S. at 327.

In assessing a petitioner's claim of actual innocence, the court must consider all relevant evidence, old and new, including evidence that was excluded or unavailable at trial. *Id.* Where the newly presented evidence calls into question the credibility of witnesses who testified at trial, "the habeas court may have to make some credibility assessments." *Id.* at 330. An evidentiary hearing is not required, however, "if development of the claim would not establish actual innocence." *Bannister v. Delo*, 100 F.3d 610, 617 (8th Cir. 1996)

In this case, the court of appeals instructed me to "consider the particular facts raised by the petitioner in support of his actual innocence claim in determining whether an evidentiary hearing is warranted." *Teleguz,* 689 F.3d at 331. The court further explained:

> [A]n evidentiary hearing may be necessary to assess whether recantations are credible, or whether "'the circumstances surrounding the recantation[s] suggest [that they are] the result of coercion, bribery or misdealing.'" [*Wolfe v. Johnson,* 565 F.3d 140, 169 (4th Cir. 2009)] (quoting *United States v. Johnson,* 487 F.2d 1278, 1279 (4th Cir.1973)). This type of credibility determination, required for *Schlup* analysis, may be more difficult on a cold record. *Cf. Coleman* [*v. Hardy,* 628 F.3d 314, 320–21 (7th Cir. 2010)] (remanding for an evidentiary hearing to "evaluate the reliability" of the recantation of a codefendant whose "reputation for honesty is weak"). The district court should also consider the "heightened need for fairness in the administration of death[,] ... born of the appreciation that death truly is different from all other punishments a society inflicts upon its citizens." *Callins v. Collins,* 510 U.S. 1141, 1149, 114 S.Ct. 1127, 127 L. Ed. 2d 435 (1994) (Blackmun, J., dissenting from denial of certiorari).

*Id.*

In light of these instructions, I find that an evidentiary hearing is necessary. This is not a case in which the new evidence of innocence is in the form of irrefutable scientific information or other facts susceptible of evaluation and resolution on the record alone. Live testimony, subject to cross examination and questions from the court, is in my opinion necessary to determine the accuracy and reliability of the claim of actual innocence.

### III

For the foregoing reasons, an evidentiary hearing will be promptly scheduled on the petitioner's gateway claim of actual innocence.

It is so **ORDERED**.

ENTER: December 11, 2012

/s/  JAMES P. JONES
United States District Judge