## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **IVAN TELEGUZ,** | ) | |
| | ) | |
| Petitioner, | ) | Case No. 7:10CV00254 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **EDDIE L. PEARSON, WARDEN,** | ) | By:  James P. Jones |
| **SUSSEX I STATE PRISON,** | ) | United States District Judge |
| | ) | |
| Respondent. | ) | |

*Michael F. Williams, K. Winn Allen, Kenneth Jenq, and Megan Lacy, Kirkland & Ellis LLP, Washington, D.C., Matthew C. Stiegler, Philadelphia, Pennsylvania, and Elizabeth Peiffer, Virginia Capital Representation Resource Center, Charlottesville, Virginia, for Petitioner. Katherine B. Burnett and Matthew P. Dullaghan, Senior Assistant Attorneys General, and Alice T. Armstrong and Benjamin H. Katz, Assistant Attorneys General, Office of the Attorney General, Richmond, Virginia, for Respondent.*

This capital habeas corpus case is before me on remand from the court of appeals, which instructed me to conduct a thorough analysis of whether the petitioner has made a gateway showing of actual innocence sufficient to excuse the procedural default of certain constitutional claims. An evidentiary hearing was originally scheduled for June 13-15, 2013, in order to determine the reliability of any new evidence proffered to show the petitioner's actual innocence. The parties filed a number of motions in contemplation of the hearing, including motions seeking discovery and a continuance. I orally ruled on these motions following

oral argument on May 24, 2013.   This Opinion sets forth the reasons for my rulings.

I

The court of appeals summarized the facts of the case as follows:

On February 9, 2006, a jury convicted [Ivan] Teleguz of capital murder for hire after his former girlfriend, Stephanie Sipe, was found dead in the apartment she shared with Teleguz's infant son. Although DNA evidence linked Michael Hetrick to the murder, Hetrick testified at Teleguz's trial that Teleguz had hired him to commit the crime. Hetrick's allegations were corroborated by two additional witnesses: Edwin Gilkes and Aleksey Safanov. Gilkes testified that he had been present at a birthday party where Teleguz hired Hetrick to commit the murder. Gilkes also testified that he accompanied Hetrick to Sipe's apartment and waited outside for Hetrick during the murder. Gilkes further claimed that he was afraid of Teleguz because he had heard rumors that Teleguz was a member of the Russian mafia, as well as a specific account of a murder committed by Teleguz in Ephrata, Pennsylvania. According to Gilkes, Teleguz had shot a Russian criminal in the street outside the Ephrata Recreation Center.

Safanov testified that Teleguz attempted to hire him to murder Sipe so that Teleguz would no longer be required to pay child support. Safanov also testified that Teleguz had spoken to him after the murder, complaining that "the black man" he had hired to kill Sipe had left blood at the scene, and offering Safanov money if he would "eliminate [the] killer." J.A. 325. Although other evidence was presented at trial, the Supreme Court of Virginia explained that, "in order to return a guilty verdict, the jury had to believe the testimony of Safanov, Gilkes, and Hetrick." *Teleguz v. Commonwealth,* 273 Va. 458, 643 S.E.2d 708, 728 (2007) ("*Teleguz I* ").

On February 14, 2006, the jury recommended a death sentence after finding that two statutory aggravating factors were present: vileness and future dangerousness. Following Teleguz's appeal, the

2-

Supreme Court of Virginia affirmed his conviction and sentence. *Teleguz I,* 643 S.E.2d at 732. He then filed a petition for writ of habeas corpus in state court, which the Supreme Court of Virginia dismissed. *Teleguz v. Warden of Sussex I State Prison,* 279 Va. 1, 688 S.E.2d 865, 879 (2010). On November 12, 2010, Teleguz filed a petition for writ of habeas corpus in the United States District Court for the Western District of Virginia, asserting various grounds for relief. Some of Teleguz's claims had been adjudicated on the merits by the Supreme Court of Virginia, while others had been procedurally defaulted. Teleguz argued that, pursuant to the Supreme Court's decision in *Schlup[v. Delo],* 513 U.S. 298, 115 S.Ct. 851 [(1995)], the district court should consider the merits of his procedurally defaulted claims because new and reliable evidence established that he was actually innocent of Sipe's murder ("*Schlup* gateway innocence claim").

In support of his *Schlup* gateway innocence claim, Teleguz offered several categories of evidence. First, he presented affidavits of third-party witnesses who claimed that Teleguz did not attend the birthday party during which he was alleged to have hired Hetrick to kill Sipe. Second, he offered police reports and affidavits to establish that no murder occurred outside the Ephrata Recreation Center, that no murder that occurred in Ephrata prior to Teleguz's trial remains unsolved, and that the only murder involving a Russian victim occurred at a private residence. Third, Teleguz presented affidavits in which Gilkes and Safanov recanted the testimony they offered at Teleguz's trial. Gilkes now claims that he was coerced into testifying against Teleguz by the prosecutor, who "made clear that if [he] did not, [he] would have been the one on death row today, not Teleguz." J.A. 1281. Gilkes executed affidavits in both 2008 and 2010 denying that Teleguz hired Hetrick to kill Sipe. Safanov currently resides in Kazakhstan, but was contacted by lawyers from Teleguz's defense team. According to their affidavits, Safanov now insists that he never discussed Sipe's murder with Teleguz and agreed to testify during Teleguz's trial only because he believed that if he cooperated with the prosecutor, he would be eligible for a visa allowing him to stay in the United States despite pending federal gun charges.

*Teleguz v. Pearson*, 689 F.3d 322, 325-27 (4th Cir. 2012).

I denied Teleguz's petition for habeas relief on August 1, 2011. The court of appeals granted a certificate of appealability to determine whether I abused my discretion in denying Teleguz an evidentiary hearing on his *Schlup* gateway innocence claim. After argument, the court of appeals remanded the case so that I might conduct a "rigorous *Schlup* analysis." *Id.* at 330. Though both the petitioner and the respondent argued that I should conduct this analysis based solely on the written record, I disagreed and ordered an evidentiary hearing to assess the reliability of the new evidence offered by Teleguz. *Teleguz v. Pearson*, No. 7:10CV00254, 2012 WL 6151984 (W.D. Va. Dec. 11, 2012).

In his first discovery motion, the Warden sought leave to subpoena a copy of the file of Gilkes's trial counsel, which Teleguz's counsel had already received. Teleguz responded that disclosure of the file to the Warden would violate the attorney-client privilege and work product doctrine, and Gilkes should be given the opportunity to invoke the privilege prior to the issuance of a subpoena. I have previously appointed counsel for Gilkes, who has filed on Gilkes's behalf an objection to disclosure of his prior's counsel file.

Teleguz, in his initial discovery motion, sought leave to serve document requests and interrogatories on eleven law enforcement, prosecutorial, and correctional entities. These proposed discovery requests concerned:

> (i) communications that Edwin Gilkes, Aleksay Safanov, or Michael Hetrick had with law enforcement officials; (ii) communications that

> David Everhart or Latesha Everhart [the hosts of the birthday party]
> had with law enforcement officials, including any communications
> related to a birthday party for David Everhart on June 27, 2001;
> (iii) information regarding the Commonwealth's knowledge of a prior
> murder that allegedly involved Teleguz; and (iv) information about
> inmates who have been housed with or near Edwin Gilkes or Michael
> Hetrick.

(Pet'r's Br. in Supp. of Mot. for Leave to Conduct Disc. 1.)  In his supplemental motion, the petitioner sought a subpoena to the United States Attorney for the District of Massachusetts for any records relating to Aleksay Safanov. The Warden opposed Teleguz's request for discovery, arguing that the proposed discovery represents an impermissible fishing expedition, that Teleguz had more than adequate time to obtain the information sought before the late date on which he filed his motion, and that Teleguz had not articulated how any of the facts he hoped to find would be relevant to the only claim currently at issue, which is his gateway claim of actual innocence.

The Warden also filed a motion to exclude Teleguz from offering expert testimony at the hearing.  In addition, the Warden moved for the appointment of counsel for potential witnesses Hetrick and Safanov, and to strike a reply brief that was filed by the petitioner without prior permission of the court.  Finally, the petitioner moved to continue the hearing in light of the pending discovery requests and a scheduling conflict.  I granted the motion to continue, the motion to strike, and the motion to appoint counsel for Hetrick, and denied all other motions.

II

Discovery is not available as a matter of right in habeas corpus cases. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rule 6(a) of the Rules Governing § 2254 Cases provides, in relevant part, "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." A federal habeas petitioner establishes the requisite good cause to conduct discovery "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-09 (internal quotation marks and citation omitted). Rule 6 does not permit a petitioner to embark on a fishing expedition by issuing broad discovery requests based on conclusory allegations. *See, e.g.*, *Teti v. Bender*, 507 F.3d 50, 60 (1st Cir. 2007); *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004); *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994); *see also Lenz v. Washington*, 444 F.3d 295, 304 (4th Cir. 2006) ("An evidentiary hearing is not a fishing expedition for facts as yet unsuspected, but is instead an instrument to test the truth of facts *already alleged* in the habeas petition.") (internal quotation marks and citation omitted).

The sole purpose of the upcoming hearing is to assess Teleguz's gateway innocence claim. A *Schlup* actual innocence claim allows a habeas petitioner to overcome procedural defaults by presenting reliable new evidence tending to show

that he is innocent of the crime for which he was convicted.  To succeed on his *Schlup* claim, Teleguz must show that it is more likely than not that no reasonable juror could have found him guilty beyond a reasonable doubt in light of the new evidence he has proffered.  *Schlup*, 513 U.S. at 327.  The new evidence Teleguz identified in his habeas petition consists of the following:  (1) affidavits of third-party witnesses indicating that Teleguz did not attend the birthday party where he allegedly hired Hetrick; (2) police reports and affidavits to establish that the alleged Ephrata murder, which was referenced in Gilkes's trial testimony and during the penalty-phase proceedings, never occurred; and (3) affidavits from Gilkes and Safanov in which they recant their trial testimony.

Teleguz requested several categories of discovery, which I will address in turn.  First, Teleguz sought to propound interrogatories and document requests concerning communications between law enforcement and Gilkes, Safanov, and Hetrick.  Teleguz argued that the credibility of these three witnesses will be crucial to my determination of whether he has made an adequate showing of actual innocence, and he must therefore be permitted to develop facts regarding any promises or threats the police made to these witnesses.  Both Gilkes and Hetrick explained their false testimony in part by recounting their interactions with law enforcement, and Hetrick, though he has not recanted, also mentioned in 2004 that the police had spoken with him on several occasions.  The Warden countered that

Teleguz's requests for discovery were speculative, not sufficiently specific, tardy, and irrelevant to Teleguz's contention that he is actually innocent of murder for hire. The Warden further asserted that it is improper for Teleguz to seek through interrogatories information that he himself knows or should know.

I find that Teleguz did not establish good cause for conducting the discovery he requested regarding communications between law enforcement and Gilkes, Safanov, and Hetrick. While credibility of these witnesses is a key issue in the upcoming *Schlup* hearing, Teleguz did not specifically identify what he expected to find from the broad discovery requests he sought to propound. Safanov and Gilkes will presumably testify at the upcoming hearing, which will allow me to assess their credibility. Teleguz speculated that he might find some further evidence that would bolster the statements Safanov and Gilkes have made in their affidavits, but that contention is impermissibly speculative, and the requests Teleguz suggested represented a fishing expedition. Moreover, the evidence Teleguz sought to uncover, if it exists, would be cumulative of the evidence he has already offered in support of his actual innocence claim. Therefore, I denied Teleguz's motion with respect to Requests for Production 1, 2, 3, 7, and 10, and Interrogatories 3, 4, 7, and 10.

Second, Teleguz requested discovery relating to interactions between law enforcement and David and Latesha Everhart, who allegedly hosted the birthday

party at which Teleguz hired Hetrick to kill Sipe. The Everharts have executed affidavits claiming that Teleguz did not attend that party. The Warden objected to these requests on the ground that the Everharts are the petitioner's witnesses, and it is improper for Teleguz to seek through interrogatories information that he himself knows or should know.

For the same reasons stated above, I find that Teleguz did not establish good cause to propound the proposed requests regarding the alleged birthday party and the Everharts' communications with law enforcement. The credibility of the Everharts will be a key issue in the upcoming *Schlup* evidentiary hearing, but the Everharts will presumably testify at the evidentiary hearing, which will allow me to assess their credibility. Any additional evidence bolstering the Everharts' statements that Teleguz did not attend the birthday party would be cumulative, and evidence regarding what the police knew about Teleguz's attendance is irrelevant to a determination of the *Schlup* actual innocence issue. Therefore, I denied the petitioner's motion for discovery with respect to Requests for Production 4, 5, and 11 and Interrogatories 5, 6, and 9.

Teleguz also requested discovery relating to the purported Ephrata, Pennsylvania murder that Teleguz allegedly committed. As the petitioner noted in his reply brief, counsel for the Warden admitted during oral argument before the Fourth Circuit that the Commonwealth did not have any evidence that the

purported Ephrata murder ever occurred.  In light of this admission, I find that Teleguz failed to establish good cause to conduct discovery related to the Ephrata murder.  These requests appear to have been made with the hope of developing a claim of withheld evidence under *Brady v. Maryland*, 871 U.S. 812 (1963), but no *Brady* claim is presently before the court.  Therefore, I denied Teleguz's request for discovery with respect to Request for Production 12 and Interrogatories 11 and 12.

Finally, Teleguz requested discovery regarding inmates who had been housed near Gilkes and Hetrick.  The Warden argued that this request was based on pure speculation and represented a fishing expedition.

I agree with the Warden.  The petitioner's requests relating to inmates housed near Gilkes and Hetrick were not supported by specific allegations, as Rule 6 requires.  As noted above, Rule 6 does not sanction fishing expeditions.  Thus, I denied Teleguz's motion with respect to Requests for Production 6, 8, and 9, and I also denied the petitioner's motion to serve Interrogatories 1, 2, and 8.

To summarize, I denied all of the petitioner's proposed Requests for Production and Interrogatories — all directed to eleven different entities — because they were overbroad and not sufficiently specific, and because the petitioner unnecessarily delayed in making his request for discovery.

The petitioner filed a later motion in which he sought a subpoena directed to the Massachusetts United States Attorney's Office ordering production of records regarding potential witness Safanov.  Again, while Safanov's credibility is a key issue in the upcoming *Schlup* hearing, Teleguz did not specifically identify what he expected to find in the records he requested.  Based on representations by Teleguz's counsel, Safanov has been located and is likely to testify at the upcoming hearing, which will allow me to assess his credibility.  Teleguz speculated that he might find some further evidence that would bolster the statements Safanov made in his affidavits, but that contention is impermissibly speculative.  Moreover, the evidence Teleguz sought to uncover, if it exists, would be cumulative of the evidence he has already offered in support of his actual innocence claim.  I find that the request for this subpoena was merely a fishing expedition, and Teleguz did not establish the requisite good cause for issuance of the subpoena.  Therefore, I denied the motion.

The Warden, in his Motion for Leave to Conduct Discovery, asked that I permit him to subpoena a copy of the file of Gilkes's trial counsel, which Teleguz had already received.  The Warden contended that because Gilkes's trial counsel was directly involved in negotiating his plea agreement, the file likely contains information that directly bears on the reliability of the assertions in Gilkes's affidavit.  Teleguz responded that disclosure of the file to the Warden would

violate Gilkes's attorney-client privilege.  Gilkes, through his appointed counsel in this case, moved for a protective order, asserting that disclosure of the file would violate his attorney-client privilege.

I need not address the privilege issue, because I find that the Warden did not establish good cause for the discovery request.  As noted above, discovery in habeas corpus cases is not the norm, and a party seeking discovery must satisfy the burden of establishing good cause for the request.  The Warden speculated that Gilkes's trial counsel's file might contain statements by Gilkes that contradict his recanting affidavit, which the Warden could use at the hearing to impeach Gilkes.  This conjecture is no less speculative than those made in support of Teleguz's requests.  The Warden should have ample material for cross examination of Gilkes, as his affidavit clearly contradicts his sworn trial testimony.  Any other relevant statements in the file, if they exist, would likely be cumulative.  For these reasons, I denied the Warden's motion for discovery, and I denied Gilkes's motion in limine and for a protective order as moot.

I denied the Warden's motion to exclude expert testimony because following the filing of the Warden's motion, the petitioner made the required expert disclosures pursuant to the Federal Rules of Civil Procedure.  I granted the Warden's motion to appoint counsel for Hetrick, as his location is known, he is accessible to appointed counsel, he may testify at the hearing, and such testimony

could impact his obligations under his plea agreement. I denied the Warden's motion to appoint counsel for Safanov because, though Teleguz's counsel indicates he has been located, his location has not yet been disclosed and his accessibility to appointed counsel is somewhat doubtful, as is his ability to testify at the hearing. In the future, if it becomes clear that Safanov will indeed testify, the Warden may again move for appointment of counsel.

I granted the Warden's motion to strike Teleguz's reply brief on his supplemental discovery motion because I previously ordered that the parties were not permitted to file reply briefs unless directed to do so by the court. Finally, I granted Teleguz's motion to continue the hearing because Teleguz's lead counsel in this matter had an irreconcilable scheduling conflict with another case.

III

For the foregoing reasons, I ruled that both parties' respective motions for discovery, the Warden's motion to exclude expert testimony, and Gilkes's motion in limine and motion for a protective order were denied. I further ruled that the Warden's motion for appointment of counsel was granted as to Hetrick but denied as to Safanov. Finally, I ruled that the petitioner's motion to continue the hearing and the Warden's motion to strike were granted.

DATED:   June 17, 2013

/s/  James P. Jones
United States District Judge