# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **IVAN TELEGUZ,** | ) | |
| | ) | |
| Petitioner, | ) | Case No. 7:10CV00254 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **DAVID ZOOK, WARDEN,** | ) | By: James P. Jones |
| **SUSSEX I STATE PRISON,** | ) | United States District Judge |
| | ) | |
| Respondent. | ) | |

*William P.J. Kimmitt, Michael F. Williams, and K. Winn Allen, Kirkland & Ellis LLP, Washington, D.C., for Petitioner; Alice T. Armstrong, Senior Assistant Attorney General, Office of the Attorney General of Virginia, Richmond, Virginia, for Respondent.*

In this capital habeas case, the petitioner has filed a Motion for Relief from Judgment under Federal Rule of Civil Procedure 60(b) based on the Supreme Court's decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), issued while his federal habeas proceedings were pending. He contends that the change in law effected by *Martinez*, combined with his death sentence and the fact that four of his procedurally defaulted ineffective assistance of trial counsel claims have never been reviewed on the merits, constitute extraordinary circumstances sufficient to justify reopening his habeas proceedings to consider those four defaulted claims. I find that the petitioner's Rule 60(b)(6) motion is untimely and that he has failed to

demonstrate extraordinary circumstances warranting relief from judgment. Therefore, I will deny the motion.

I.

The court of appeals recently gave the following summary of the facts and proceedings of this case:

> In 2001, Stephanie Sipe was found murdered in the Harrisonburg, Virginia apartment she shared with her infant son. While Teleguz, Sipe's ex-boyfriend and her son's father, had been a suspect, the investigation had stalled until Aleksey Safanov,[ ] imprisoned in Massachusetts on federal charges, provided a tip to United States Marshal Michael Nelson that "he knew of a Russian male that had his wife killed. He said that a Russian male hired a black male from Pennsylvania, Lancaster, Pennsylvania to kill his wife." J.A. 2828. Safanov's tips led to Edwin Gilkes, and U.S. Marshal Nelson passed the information on to the Harrisonburg Police Department. Ultimately, the investigation resulted in, among other things, a capital murder for hire case against Teleguz.
>
> In February 2006, a jury convicted Teleguz of murder for hire. *Teleguz v. Pearson,* 689 F.3d 322, 325 (4th Cir. 2012). Michael Hetrick, who had actually committed the killing, testified at trial that Teleguz had paid him two thousand dollars to slit Sipe's throat.
>
> Hetrick's murder-for-hire allegations were corroborated by both Gilkes and Safanov. Gilkes testified that he had been present at a birthday party where Teleguz hired Hetrick to commit the murder. Gilkes also testified that he accompanied Hetrick to Sipe's apartment and waited outside for Hetrick during the murder. Gilkes further claimed that he was afraid of Teleguz because he had heard rumors that Teleguz was a member of the Russian mafia.
>
> Safanov testified at Teleguz's trial that Teleguz attempted to hire him to murder Sipe to avoid paying child support. Safanov also testified that Teleguz had spoken to him about the murder after it had occurred, complaining that the man he had hired to kill Sipe had left

2

blood at the scene and offering Safanov money to "eliminate" the killer. *Teleguz*, 689 F.3d at 326.

In February 2006, a Virginia jury recommended that Teleguz be sentenced to death upon finding two statutory aggravating factors: vileness and future dangerousness. The Supreme Court of Virginia affirmed Teleguz's conviction and sentence. *Teleguz v. Commonwealth*, 273 Va. 458, 643 S.E.2d 708 (2007). Teleguz proceeded to file a petition for writ of habeas corpus in state court, which the Supreme Court of Virginia dismissed. *Teleguz v. Warden of Sussex I State Prison*, 279 Va. 1, 688 S.E.2d 865 (2010).

Teleguz then turned to the federal courts, filing a petition for writ of habeas corpus in the United States District Court for the Western District of Virginia in November 2010. Some of Teleguz's claims had been adjudicated on the merits in state court while others had been procedurally defaulted. *Teleguz*, 689 F.3d at 326. Teleguz argued that his defaulted claims should nevertheless be considered, primarily because he had new, reliable evidence that he was actually innocent ("Gateway Innocence Claim").

In support of his Gateway Innocence Claim, Teleguz offered what we previously described as three categories of evidence. First, Teleguz presented affidavits of witnesses who indicated that they had not seen him at the birthday party during which he was alleged to have hired Hetrick to kill Sipe. Second, he presented evidence to establish that a murder in Ephrata, Pennsylvania alluded to during his trial never occurred. Third, and most importantly, Teleguz presented affidavits in which Gilkes and Safanov recanted testimony they offered at Teleguz's trial.

Gilkes claimed that he had been coerced into testifying against Teleguz by the prosecutor, who "made clear that if [he] did not, [he] would have been the one on death row today, not Teleguz." J.A. 3546. Gilkes executed affidavits in both 2008 and 2010 disavowing aspects of his trial testimony.

Similarly, Safanov, who had left the United States for Kazakhstan and Kyrgyzstan, ostensibly submitted an affidavit. According to that affidavit, as well as affidavits submitted by Teleguz's defense team, which had been in contact with someone

3

claiming to be Safanov, Safanov asserted that he had never discussed Sipe's murder with Teleguz and agreed to testify falsely during Teleguz's trial because both the prosecutor pursuing Teleguz and a United States marshal told him that if he cooperated, he would be eligible for perks including an S visa allowing him to remain in the United States despite pending gun charges.

In August 2011, the district court denied Teleguz habeas relief without holding a hearing. *Teleguz v. Kelly*, 824 F.Supp.2d 672 (W.D. Va. 2011). Teleguz appealed, arguing that he was "entitled to an evidentiary hearing to demonstrate a miscarriage of justice." Petitioner's Br. at ii. This Court vacated and remanded for a rigorous Gateway Innocence Claim analysis, strongly suggesting that an evidentiary hearing may be warranted to assess the credibility of the recanting witnesses. *Teleguz,* 689 F.3d 322.

On remand in district court, Teleguz changed his tune, "arguing that an evidentiary hearing [was] unnecessary" and that the district court should decide his Gateway Innocence Claim "on the cold record." *Teleguz v. Pearson,* No. 7:10CV00254, 2012 WL 6151984, at *2 (W.D.Va. Dec. 11, 2012). "In light of th[is Court's] instructions," however, the district court found that an evidentiary hearing was "necessary." *Id.* at *3. Accordingly, it held a several-day evidentiary hearing in November 2013.

At the hearing, Gilkes appeared but refused to testify. And Safanov did not appear, even by deposition or phone. In other words, neither of the recanters testified in support of their recantations. Meanwhile, Hetrick appeared and testified in detail and consistent with his trial testimony, i.e., that Teleguz had hired him to kill Sipe. Prosecutor Marsha Garst, whom Gilkes and Safanov accused of threatening them into testifying against Teleguz, appeared and testified that those accusations were false. And U.S. Marshal Nelson testified that Safanov's accusation that Nelson had told Safanov he could benefit from an S visa for assisting the government was also false.

Ultimately, in July 2014, the district court again denied Teleguz's petition. The district court held that it "c[ould] not conclude that more likely than not, given the overall, newly supplemented record, no reasonable juror would have found Teleguz

4

guilty beyond a reasonable doubt. As such, the petitioner has not
made a threshold showing of actual innocence to permit review of his
procedurally-defaulted claims." *Teleguz v. Davis,* No. 7:10CV00254,
2014 WL 3548982, at *20 (W.D.Va. July 17, 2014) (quotation marks
and citation omitted). The district court also rejected Teleguz's claim
that he had made a sufficient showing that his [state] habeas attorneys
had been deficient in failing to pursue the Ephrata, Pennsylvania
murder issue ("*Martinez* Claim").

*Teleguz v. Zook*, 806 F.3d 803, 805–07 (4th Cir. 2015). On November 30, 2015, the court of appeals affirmed my second denial of Teleguz's petition. *Id.* at 818.

The Supreme Court issued the *Martinez* decision on March 20, 2012, after my initial denial of Teleguz's petition but before the court of appeals remanded the case for a more rigorous analysis of the Gateway Innocence Claim. In *Martinez*, the Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S. Ct. at 1315. In other words, a federal habeas petitioner may be able to overcome a procedural default of a claim of ineffective assistance of trial counsel if his state habeas counsel was ineffective in failing to raise trial counsel's ineffectiveness as an issue in the initial state habeas proceeding.

The *Martinez* exception to the general rule of procedural default is, however, a narrow one. In this case, in order to establish cause for his default under *Martinez*, Teleguz must show that (1) his state habeas counsel was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), for failing

5

to raise the defaulted issues in the initial habeas proceeding, and (2) the underlying trial ineffectiveness claim is substantial, meaning that it has merit. 132 S. Ct. at 1318. To establish ineffectiveness under *Strickland*, Teleguz must show that (1) "counsel's representation fell below an objective standard of reasonableness," considering circumstances and facts known to counsel at the time of the representation, and (2) but for counsel's errors, there is a reasonable probability that the outcome of the case would have been different. 466 U.S. at 687-88, 694-95.

In my initial denial of Teleguz's federal habeas petition, I held that the following five ineffective assistance of trial counsel claims had been procedurally defaulted.

1. Ephrata murder testimony:

   Teleguz argues that his trial counsel failed to effectively rebut statements tying him to an alleged murder in Ephrata, Pennsylvania. Prior to trial, Teleguz's counsel filed a motion in limine to bar references to this alleged murder. The court excluded evidence of the alleged murder during the guilt phase, but allowed it during the penalty phase. However, defense counsel asked Gilkes during the guilt phase about the alleged murder, but Gilkes denied remembering telling police about the event. The prosecution then asked Gilkes about the alleged murder, and he testified about the details. During the penalty phase, the prosecution highlighted Gilkes' earlier testimony.

   Teleguz did not assert this claim before the Supreme Court of Virginia. He now offers affidavits and other evidence in support of the claim that the murder did not occur. . . . Teleguz has failed to show cause for the default and has failed to show that the facts could not have been previously discovered through the exercise of due

6

diligence.  Furthermore, Teleguz has not shown a fundamental miscarriage of justice that would excuse the default.  Therefore, this claim may not be considered on the merits.

*Teleguz v. Kelly*, 824 F. Supp. 2d 672, 695 (W.D. Va. 2011), *vacated in part sub nom. Teleguz v. Pearson*, 689 F.3d 322 (4th Cir. 2012).

2. "Dial up a murder" references:

Teleguz argues that his counsel was ineffective for failing to rebut the prosecution's assertion that Teleguz could have someone killed by a telephone call from prison.  During the state's closing argument at the penalty phase of the trial, the prosecutor stated that Teleguz was a future danger because "he can pick up a phone . . . and dial up a murder because he can call another Aleksey Safanov or another Edwin Gilkes or another Michael Hetrick."  (J.A. 3454–55.)  Defense counsel responded by saying that a phone call would be insufficient because it would take money to hire a contract killer, which Teleguz would not have if incarcerated.  Teleguz asserts that counsel neglected to explain telephone procedures that would apply to Teleguz while in prison, in that inmates may only call certain pre-approved individuals, and telephone calls are monitored.

During the state habeas proceedings, Teleguz raised the argument that counsel was ineffective for failing to object to the prosecution's statement.  The Supreme Court of Virginia rejected the argument, maintaining that the statement outlined the facts of the case and was not improper. [*Teleguz v. Warden of Sussex I State Prison*, 688 S.E.2d 865, 875 (2010) ("Teleguz II").]  Teleguz also argued that counsel was ineffective for failing to request that the trial court re-open the evidence so that he could present testimony regarding inmate phone privileges.  The Supreme Court of Virginia rejected the argument because Teleguz "fail[ed] to proffer what evidence would have been gained from presenting testimony regarding inmate phone privileges." *Id.* at 877.  Therefore, Teleguz had not shown that counsel's performance was deficient. *Id.*

To the extent that the argument presented here is the same as those presented before the state courts, I find that the Supreme Court of Virginia's decision was reasonable.  However, much of the

7

substance of this claim, relating to the failure to rebut the prosecution's statement, is different from that advocated during the state habeas proceedings. Therefore, Teleguz's rebuttal claim was not exhausted in state court and therefore is defaulted here. Teleguz has not asserted a cause for the default, and there is no fundamental miscarriage of justice to excuse that default.

*Teleguz v. Kelly*, 824 F. Supp. 2d at 695-96.

    3. Manner of death:

Teleguz argues that his trial counsel was ineffective for not casting doubt on Hetrick's testimony that Teleguz ordered him to cut Sipe's throat. Teleguz asserts that the prosecution's portrayal of Teleguz as a future danger and its contention that the crime met the definition of "vile" was enhanced by this testimony. Teleguz contends that there was unused evidence that would have shown that Hetrick had threatened to cut another woman's throat, had killed someone in the past, and had described how he would kill someone by cutting them. He also asserts that counsel should have informed the jury that Hetrick originally stated that he cut Sipe's throat because he was angered when she fought back and caused the knife to cut him.

Teleguz raised a similar, but not identical, argument during the state habeas proceedings. There, Teleguz asserted that his counsel was ineffective for failing to secure the testimony of Kimberly Woods and Jessica Swartz, who would have testified about threats and comments made by Hetrick that would have undermined his claim that Teleguz chose the manner of death.

The Supreme Court of Virginia rejected the argument that trial counsel was ineffective, maintaining that neither the performance nor the prejudice prong of *Strickland* had been met. *Teleguz II*, 688 S.E.2d at 878. The defense was unable to obtain Swartz's appearance because a Pennsylvania court determined that Swartz would have been caused undue hardship by being compelled to travel to Virginia and testify. Trial counsel asked for a continuance to secure Woods' presence, but the motion was denied because the trial court determined that her testimony would be irrelevant. Trial counsel argued that the testimony would be relevant because Woods would testify that Hetrick had threatened to kill Woods by cutting her throat.

8

The trial court held that the testimony would not show that it was Hetrick's idea, and not Teleguz's, to cut Sipe's throat. Teleguz also asserted to the Supreme Court of Virginia that his appellate counsel was ineffective for failing to preserve or adequately brief the issues relating to Woods' proffered testimony, but the argument was rejected because Teleguz had not shown that Woods' testimony would have been relevant. *Id.*

The Supreme Court of Virginia's decision was reasonable. Teleguz has not shown that his trial counsel was deficient in the attempts to secure the testimony of the witnesses and has not shown that Woods' testimony would have been admissible if it had been secured. To the extent Teleguz asserts new arguments, and presents new evidence, relating to his counsel's failure to offer other evidence that Hetrick chose the manner of Sipe's death, the claim is defaulted because it was not raised in state court. Teleguz has not shown cause and prejudice or a fundamental miscarriage of justice to excuse the default.

*Teleguz v. Kelly*, 824 F. Supp. 2d at 697–98.

4. Background and upbringing evidence at sentencing:

Teleguz claims that his trial counsel failed to adequately investigate and present evidence of his background and character, including the persecution he and his family faced in the Ukraine. He asserts that his trial counsel was aware that his Pentecostal Christian faith resulted in persecution of his family in the Ukraine of the time and that this persecution may have exerted a negative impact on his social and emotional functioning. Nevertheless, trial counsel failed to fully investigate the effects of the persecution. As evidence in support of his claim, Teleguz offers documents, including affidavits from various family members, which were not presented in the state habeas action.

Although claims relating to specific kinds of mitigation evidence from particular experts were presented to the Supreme Court of Virginia, this more general claim about Teleguz's upbringing, particularly from family members, was not. The defendant has not asserted cause for the default and has not shown a fundamental

9

miscarriage of justice. *See Sawyer [v. Whitley]*, 505 U.S. [333,] 347, 112 S.Ct. 2514 [(1992)].

*Teleguz v. Kelly*, 824 F. Supp. 2d at 699–700.

    5. Consular assistance:

    Teleguz argues that his trial counsel's failure to enlist and make use of consular assistance amounted to ineffective assistance of counsel. He concedes that this claim is procedurally defaulted because he did not assert it in state court. He does not argue that the default should be excused because of cause and prejudice. However, he argues that the claim should be considered to avoid a fundamental miscarriage of justice because he is actually innocent of the death penalty.

    I find that Teleguz has not established by clear and convincing evidence that, but for the alleged constitutional violation, he would have been ineligible for the death penalty. *See Sawyer,* 505 U.S. at 347, 112 S.Ct. 2514. First, Teleguz posits that Ukrainian officials could have assisted his trial counsel in discovering and developing information about his childhood in the Ukraine. Teleguz does not assert that the evidence that might have been uncovered could have made him ineligible for the death penalty by negating the aggravating factors found by the jury. Second, he suggests that the Ukrainian consulate might have approached the proper authorities to request that the death penalty not be imposed. This, too, fails to undermine the aggravating factors found by the jury. Furthermore, the argument is speculative; Teleguz cites no evidence indicating that the Ukrainian government could have affected whether the death penalty was sought in this case. Therefore, the default is not excused due to actual innocence.

*Teleguz v. Kelly*, 824 F. Supp. 2d at 700-01.

Teleguz appealed my initial denial of his federal habeas petition to the Fourth Circuit, and while that appeal was pending, the Supreme Court issued its decision in *Martinez*. Teleguz had alerted the Fourth Circuit to the Supreme

10

Case 7:10-cv-00254-JPJ   Document 349   Filed 08/31/16   Page 10 of 20   Pageid#: 7800

Court's pending decision in *Martinez* in his opening appellate brief, succinctly stating that he was "rais[ing] the issue to preserve it for subsequent review." (Br. of Appellant at 23-24 n.12, *Teleguz v. Zook*, No. 11-9 (4th Cir. Dec. 16, 2011), ECF No. 15.) After the Supreme Court issued its decision in *Martinez*, while his initial appeal to the Fourth Circuit was still pending, Teleguz requested that the Fourth Circuit "instruct the district court to address in the first instance the application of *Martinez* to Teleguz's case." (Reply Br. at 12, *Teleguz v. Zook*, No. 11-9, (4th Cir. April 2, 2012), ECF No. 36.) Teleguz indicated,

> No additional [certificate of appealability ("COA")] is necessary to remand the *Martinez* issue. Post-conviction counsel's ineffectiveness as cause to excuse procedural default was included as an alternative argument under Teleguz's first issue. The Court granted a COA on that issue. Accordingly, the *Martinez* issue is encompassed within the existing COA grant.

(*Id.* at 12 n.5.) The first issue on which Teleguz had sought a COA pertained only to ineffective assistance of trial counsel at the guilt phase of his case; that issue did not address ineffective assistance of counsel at the penalty phase. (Pet'r's Mem. Regarding Certificate of Appealability 3-5, ECF No. 95.)

When the Fourth Circuit remanded the case to this court for a more thorough consideration of the Gateway Innocence Claim, it did not instruct me to address *Martinez*. Nevertheless, on remand, Teleguz asked me to apply *Martinez*. Specifically, in his opening post-remand brief, Teleguz contended that if I failed to rule in his favor on the Gateway Innocence Claim, *Martinez* would provide "an

11

alternative basis to reach the merits of Teleguz's defaulted claims." (Pet'r's Post-Remand Br. 29-30, ECF No. 120.) Though he generally referred to all of his defaulted claims, he addressed only one specific example of a procedural default that could be excused under *Martinez*, and that was the claim related to the Ephrata murder. (*Id.*)

At the evidentiary hearing on the Gateway Innocence Claim, counsel for Teleguz indicated that Teleguz sought to introduce "*Martinez* evidence related to our Ephrata murder claim." (Tr. 10-11, Nov. 14, 2013, ECF No. 305.) Counsel for the Warden asked counsel for Teleguz to clarify which claims Teleguz contended could be reached by applying *Martinez*. Teleguz's counsel replied, "We're saying it applies to the ineffective assistance of counsel claim that's already been asserted in the petition, which deals with the ineffective assistance concerning the Ephrata murder, so it's an existing claim, not a new claim." (*Id.* at 11-12.) I permitted Teleguz to present that evidence related to the Ephrata murder claim. Counsel for Teleguz did not seek to present any additional evidence related to *Martinez*.

In his post-hearing brief in this court, Teleguz requested "an opportunity to develop and present further evidence concerning *Martinez* issues." (Pet'r's Post-Hr'g Br. 8, ECF No. 310.) He argued that he had "presented sufficient evidence to establish cause and prejudice under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), which would overcome the procedural default of Teleguz's ineffective assistance

12

of counsel claim regarding the Ephrata murder (Claim II in Teleguz's Amended Petition)." (*Id.* at 83.) He further argued that he was "entitled to a similar opportunity to develop and present evidence and argument regarding additional ineffective assistance of counsel claims that may be cognizable under *Martinez*. The most prudent course is for this Court to provide him that opportunity now, before the case returns to the Court of Appeals." (*Id.* at 83-84.) Though he acknowledged that "[u]nder *Martinez* . . . cause and prejudice must be assessed on a claim-by-claim basis" (*id.* at 84), Teleguz did not offer any evidence or argument regarding the applicability of *Martinez* to any specific procedurally defaulted ineffective assistance claim aside from the claim pertaining to the Ephrata murder. He claimed that "whereas Teleguz has presented limited (though sufficient) evidence showing cause and prejudice under *Martinez* excusing the default of Claim II, he has had no opportunity to develop or present such evidence regarding his other claims," despite the fact that he never sought to present such evidence at the evidentiary hearing. (*Id.* at 89.)

Following the evidentiary hearing and post-hearing briefing, I again denied Teleguz's petition. I specifically addressed *Martinez* as it related to the Ephrata murder claim. I stated that Teleguz was relying on *Martinez* "to overcome a procedural bar to his sentencing-phase ineffective assistance claim relating to a murder in Pennsylvania." *Teleguz v. Davis*, No. 7:10CV00254, 2014 WL

13

3548982, at *21 (W.D. Va. July 17, 2014), *aff'd sub nom. Teleguz v. Zook*, 806 F.3d 803 (4th Cir. 2015). I concluded that Teleguz's *Martinez* argument implicated the mandate rule because "the court of appeals declined to grant a certificate of appealability as to the Ephrata murder claim." *Id.* at *23. However, "to prevent any possible injustice," *id.*, I considered the Ephrata murder claim on the merits and found that the underlying ineffective assistance of trial counsel claim was not substantial because even if trial counsel had erred, Teleguz could not show that he was prejudiced by the error, as required by *Strickland*. *See id.* at 23-25.

After I issued my second opinion denying Teleguz's petition, Teleguz again appealed. Teleguz's discussion of *Martinez* in his opening brief to the court of appeals again focused solely on the Ephrata murder claim. (Br. of Appellant, *Teleguz v. Zook*, No. 11-9 (4th Cir. Feb. 4, 2015) ECF No. 74.) He did not argue that *Martinez* applied to any other procedurally defaulted claims. Not until his reply brief to the court of appeals did Teleguz suggest to that court, again without any specificity, that *Martinez* applied to all of his procedurally defaulted claims. *(*Reply Br. of Appellant at 32-33, *Teleguz v. Zook*, No. 11-9, (4th Cir. Apr. 14, 2015) ECF No. 92.) Teleguz specifically asked the court of appeals to remand his case for a full hearing on the application of *Martinez*. (*Id.*) The court of appeals

14

declined to do so. *Teleguz v. Zook*, 806 F.3d 803, 818 (4th Cir. 2015) (affirming this court's dismissal of Teleguz's petition).

Teleguz petitioned the court of appeals for rehearing and rehearing en banc, asking the court of appeals to "review and determine whether Teleguz's defaulted claims are cognizable under *Martinez*." (Pet. for Rehr'g and Reh'g *En Banc* at 10, *Teleguz v. Zook*, No. 11-9, (4th Cir. Dec. 14, 2015) ECF No. 107.) The court of appeals denied that petition. (Order, *Teleguz v. Zook*, No. 11-9, (4th Cir. Dec. 29, 2015) ECF No. 109.)

Teleguz next moved the court of appeals to stay its mandate pending the Supreme Court's disposition of his Petition for Writ of Certiorari. (Mot. to Stay or Recall the Mandate Pending Filing & Disposition of Pet. for Writ of Cert., *Teleguz v. Zook*, No. 11-9, (4th Cir. Dec. 29, 2015) ECF No. 110.) The court of appeals granted his motion to stay the mandate. (Order, *Teleguz v. Zook*, No. 11-9, (4th Cir. Feb. 1, 2016) ECF No. 116.)

On March 8, 2015, Teleguz moved the court of appeals to stay his execution, which had been scheduled for April 13, 2016. (Mot. for Stay of Execution, *Teleguz v. Zook*, No. 11-9, (4th Cir. Mar. 8, 2015) ECF No. 118.) In this motion, Teleguz finally identified, in a footnote, the other procedurally defaulted claims whose defaults he alleged could be overcome by application of *Martinez*. (*Id.* at

15

11 n.5.) The court of appeals granted the motion to stay his execution on March 29, 2016. Order, *Teleguz v. Zook*, No. 11-9, (4th Cir. Mar. 29, 2016) ECF No. 123.

Teleguz filed his Petition for Writ of Certiorari with the Supreme Court on May 27, 2016. (*Teleguz v. Zook*, No. 15-1450 (Sup. Ct. filed May 27, 2016).)

On March 16, 2016, Teleguz filed the instant motion in this court. His Rule 60(b) motion has been fully briefed and is ripe for decision.[1] For the reasons that follow, I will deny the motion.

## II.

Rule 60(b) allows a party to seek relief from a final civil judgment in a limited number of circumstances, including: (1) mistake or neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5) the judgment has been satisfied; and (6) "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). When a petitioner seeks Rule 60 relief from the court's judgment denying his § 2254 petition, he must demonstrate "some defect in the integrity of the federal habeas proceedings" to justify revisiting the judgment denying his original habeas petition, such as an erroneous finding of procedural default or a statute of limitations bar. *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). The petitioner may not use Rule 60 to evade the successive petition bar contained in 28 U.S.C. §

---

[1] I will dispense with oral argument because the facts and legal contentions have been adequately presented in the materials before the court and oral argument would not significantly aid in the decisional process.

16

2244(b) by bringing new claims that challenge the underlying conviction or sentence or that attack "the substance of the federal court's resolution of a [prior habeas] claim on the merits." *Id.* A motion that attempts such an attack must be construed and may be summarily dismissed as a successive § 2254 petition. *Id.* at 531–32; *United States v. Winestock*, 340 F.3d 200, 207 (4th Cir. 2003). This court may consider a successive § 2254 petition only upon specific certification from the United States Court of Appeals for the Fourth Circuit. 28 U.S.C. § 2244(b).

The Warden contends that I lack jurisdiction to consider Teleguz's Rule 60(b) motion because it is a successive habeas petition that was filed without pre-authorization from the court of appeals. I disagree. Teleguz's Rule 60(b) motion attacks my findings that certain claims were procedurally defaulted. This is a procedural issue properly raised in a Rule 60 motion. Teleguz is not asserting any new substantive claims; he is only seeking to resolve on the merits claims that were raised in his original habeas petition but found to have been procedurally defaulted. Because I found the claims procedurally defaulted, I did not consider the merits of those claims.[2] *See Coleman v. Stephens (In re Coleman)*, 768 F.3d 367, 371 (5th Cir. 2014) (stating that an erroneous prior ruling that precluded a determination on the merits, such as a finding of procedural default, is a procedural

---

[2] The exception is the Ephrata murder claim, which I did consider on the merits. I never reached the merits of the other four procedurally defaulted claims, however, and I construe Teleguz's motion to focus on those claims.

17

defect). Therefore, I conclude that Teleguz's Rule 6(b) motion does not operate as a successive habeas petition, and I have jurisdiction to decide the motion.

To obtain relief under Rule 60(b), Teleguz must show four factors: (1) timeliness, (2) a meritorious defense; (3) a lack of unfair prejudice to the opposing party; and (4) exceptional circumstances. *Werner v. Carbo*, 731 F.2d 204, 206-07 (4th Cir. 1984). A Rule 60(b) motion "must be made within a reasonable time." Fed. R. 60(c)(1). "[T]he movant bears the burden of showing timeliness." *Moses v. Joyner*, 815 F.3d 163, 166 (4th Cir. 2016).

Teleguz argues that the operative date for determining timeliness was December 29, 2015, when the court of appeals denied his Petition for Rehearing and Rehearing *En Banc*. To the contrary, I find that the operative date was July 17, 2014, when I issued my opinion denying his habeas petition for the second time and specifically addressing *Martinez* as applied to the Ephrata murder claim. Teleguz could have filed a Rule 60(b) motion at that time to request, with specificity, that I consider the application of *Martinez* to his other procedurally defaulted claims. Instead, he waited a year and eight months, approximately three weeks before the date for which his execution was scheduled, to move for relief from judgment.

The court of appeals has held that a delay of more than two years was untimely, *see Moses*, 815 F.3d at 166-67, and I believe it would find the twenty-

18

month delay here to be untimely as well. Indeed, even if the operative date were December 29, 2015, as Teleguz contends, it was unreasonable in this case for him to wait even four months to file his motion. *Martinez* was decided on March 20, 2012, nearly four years before Teleguz filed his motion, and he has been arguing the applicability of *Martinez* to his case since before the Supreme Court even issued its opinion in *Martinez*. Teleguz has offered no reason why he could not have filed his Rule 60(b) motion within days of the denial of his petition for rehearing. Under the circumstances presented here, Teleguz's motion is clearly untimely.

In addition, Teleguz's motion must be denied because he has failed to demonstrate exceptional or extraordinary circumstances warranting relief. Teleguz's motion invokes Rule 60(b)(6), which provides that I may grant relief from judgment for "any other reason that justifies relief." The Supreme Court requires "a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez*, 545 U.S. at 535 (quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950)). "Such circumstances will rarely occur in the habeas context." *Id*. A "motion for relief invoking the change in procedural default rules occasioned by *Martinez* falls well short of 'extraordinary.'" *Moses*, 815 F.3d at 168.

19

In an attempt to avoid this problem, Teleguz asserts that in addition to the change in law effected by *Martinez*, the circumstances in his case also include his diligence in pursuing review of the issues at hand and "an unreasonable refusal of the federal courts to address and resolve issues related to 'bedrock' principles of justice." (Mem. Supp. Pet'r's Mot. for Relief from J. under Fed. R. Civ. P. 60(b) 16, ECF No. 337-1) (quoting *Martinez*, 132 S. Ct. at 1317). These allegations do not amount to extraordinary circumstances. Because Teleguz has not satisfied this essential requirement for Rule 60(b) relief, I must deny his motion.

III.

For the foregoing reasons, it is **ORDERED** that Petitioner's Motion for Relief from Judgment under Federal Rule of Civil Procedure 60(b) is DENIED.

    ENTER: August 31, 2016

    /s/ James P. Jones
    United States District Judge

20

Case 7:10-cv-00254-JPJ   Document 349   Filed 08/31/16   Page 20 of 20   Pageid#: 7810